### H. D. IRWIN v. GOULD ELEVATOR COMPANY.[1]

February 26, 1909.

Nos. 15,983—(245).

**Construction of Contract.**

A certain contract considered, and *held* to limit the commission of appellant to six per cent. of the stipulated amount.

Action in the municipal court for Minneapolis by the assignee of the claim to recover $441.43, balance due for services in furnishing plans and specifications, in superintending the construction of an elevator, and for materials furnished in its construction. The case was tried before Charles L. Smith, J., who found in favor of plaintiff for

[1] Reported in 119 N. W. 1065.

the sum of $57.01, against which he allowed a set-off of $60 and granted defendant its costs and disbursements. From an order denying plaintiff's motion for a new trial, he appealed. Affirmed.

*S. Meyers*, for appellant.

*C. W. Somerby*, for respondent.

LEWIS, J.

Respondent company, being desirous of constructing a grain elevator in the vicinity of Minneapolis, entered into negotiations with S. H. Tromanhauser, an engineer and contractor of fifteen years' experience in the building of elevators. The negotiations continued from January until August 4, 1906, at which time a contract was signed. Prior to the execution of the contract, Tromanhauser made a proposition in writing to construct an elevator, on the proposed site, of eighty thousand bushels capacity, for the sum of $40,000, furnishing all of the material, and he also made a separate proposition to superintend the work upon a commission of seven per cent., the company to furnish all of the material. Their negotiations terminated in a contract of date August 4, 1906, which in part reads:

"Witnesseth: That the party of the first part [Tromanhauser] hereby promises and agrees to furnish all plans, details, drawings and specifications for the erection of a brick fireproof grain elevator with a capacity of 80,000 bushels, according to the plans agreed upon for the party of the second part, and to carefully and faithfully superintend and oversee the erection and construction of said elevator and to use his best efforts to secure the completion thereof as soon as possible, said plans, details, drawings and specifications to be prepared and completed with all reasonable speed. And the said party of the second part in consideration of the agreements of the first party hereby promises and agrees to pay the party of the first part for the services to be performed by him the sum of seven per cent. on a net sum of $38,000.00, and to pay the sum in three instalments.   *   *   * "

The elevator company agreed to furnish all material, machinery, etc., and to pay for all the labor and expenses, including the wages of one foreman; and the closing part of the contract reads:

"And the party of the first part shall not be held responsible for any delays howsoever caused, but he shall use all reasonable efforts to

have said elevator ready to receive grain on or about the 15th day of November, 1906.

"And said second party further agrees to furnish and provide the necessary materials, machinery and labor for said elevator as fast as may be required by the first party.

"It is further agreed that if the party of the first part shall fail on his part to have said elevator ready to receive grain on the above mentioned date, then he shall receive only six per cent. of the above agreed amount. But he shall in no way be held for delays caused by manufacturers or others furnishing the necessary material or labor."

The building was not completed until May, 1907. Six per cent. of the commission was paid, and this action was brought for the purpose of recovering the one per cent., and for the purpose of recovering the value of certain materials and labor furnished by appellant. The company answered, and alleged that appellant had not diligently and faithfully performed the terms of his contract, that the delay in construction was caused by him, and pleaded as an offset that respondent had paid for the benefit of appellant the sum of $108 for the services of a foreman.

The trial court found that the delay in construction was not caused by the manufacturers or others in furnishing necessary material or labor, and was not by reason of any act or omission on the part of appellant in performing the duties required of him by the terms of the contract; that the cause of the delay arose from the fact that, upon excavating the foundation, it was found that the ground contained a bed of quicksand, which required a change in the plans substituting piling and concrete work for the method originally contemplated, which necessitated extra time. The court allowed the offset to the extent of $60, and ordered judgment for respondent.

We have examined the several assignments of error, and are of opinion that with reference to the sufficiency of the evidence and the rulings on the admission of evidence no error was committed, and it is not necessary to refer to them here in detail. The principal question in the case involves the construction of the contract, and to that attention will be given.

The trial court was correct in limiting appellant's commission to six per cent. Although the contract is somewhat indefinite, when

carefully examined, it fairly appears that it was the intention of the parties that appellant should not receive more than six per cent. commission if for any reason the building should not be completed sufficiently to receive grain by November 15, 1906. Appellant suggests that the contract should be construed to mean that he was entitled to recover the seven per cent. commission, no matter what the cause of the delay, provided he used reasonable diligence in endeavoring to have the building completed on time, and that his commission could not be reduced to six per cent. unless he should in some way be at fault. This construction is unreasonable, for it would imply that it was the intention of the parties to penalize appellant to the extent of one per cent. in case he should fail to perform his duty, and to limit the penalty to that amount, no matter to what extent he might be negligent.

We are aided, somewhat, in construing the writing by taking into consideration the standpoint of the parties and the facts which were evidently in their contemplation at the time of its execution. Appellant was an experienced engineer and contractor, as well as an architect. He had many years' experience in constructing this class of buildings. Respondent company was necessarily somewhat dependent upon his skill and judgment, and whether they should employ him to furnish all the materials and construct the building, or upon a commission basis, it is evident that a very important feature in the negotiations was to secure the completion of the building to do business from November 15, 1906, and naturally respondent would be willing to pay a premium if the building were completed on time. According to the evidence, appellant had to some extent investigated the site where the proposed building was to be erected, and had satisfied himself as to the nature of the foundation, and had submitted his proposition to construct the building upon the result of such investigation.

The contract contains the apparent contradictory statement that appellant should not be held responsible for any delays, howsoever caused, but should use all reasonable efforts to have the building ready to receive grain on or about November 15. It is evident that this language signifies no intention to relieve appellant from the responsibility of using all reasonable effort to complete the elevator on time, and simply means that appellant should not be held responsible for

any delays caused by other things than as a result of his own negligence. But this has no reference to the amount of his commission. The statement that appellant should in no way be held for delays caused by the manufacturers or others in furnishing necessary material or labor was not intended to excuse him from all responsibility growing out of his own negligence. The provision which restricts the commission to six per cent. in case "the first party shall fail on his part to have said elevator ready to receive grain," etc., was not intended to depend alone upon appellant's lack of diligence. The idea was that, even though all the parties proceeded with reasonable diligence and in good faith, yet, if for any reason there should be delay in completing the building on time, then appellant was not to be paid the extra one per cent. commission.

This construction is justified, not only by the language of the contract, but from a consideration of the circumstances in which the parties were placed at the time of its execution.

Affirmed.